UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHAWNA MARIE L.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. 22-CV-5199-TLF

ORDER REVERSING AND
REMANDING FOR AWARD OF
BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.      ISSUES FOR REVIEW

A.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

B.  Whether the ALJ Properly Evaluated Plaintiff's Symptom Testimony

C.  Whether the ALJ Properly Evaluated Lay Witness Testimony

## II.   BACKGROUND

On March 6, 2017, plaintiff filed a Title XVI application for supplemental security income ("SSI"), alleging a disability onset date of September 1, 2000, which plaintiff later amended to March 16, 2017. Administrative Record ("AR") 48, 125, 140, 651.

Plaintiff's application was denied initially and on reconsideration. AR 138, 153. Administrative Law Judge ("ALJ") Rudolph Murgo held a hearing and issued a decision on March 6, 2019, that claimant was not disabled. AR 45-67, 77-101. Plaintiff appealed the decision to this Court and the Court ordered on March 1, 2021 that ALJ Murgo's decision be reversed and remanded. AR 1062-73.

ALJ Vadim Mozyrsky held a new hearing on remand on November 12, 2021 (and issued a decision on December 21, 2021 finding plaintiff not disabled. AR 648-79, 687-708.

Plaintiff seeks judicial review of the November 12, 2021 decision. Dkt. 15.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV.   DISCUSSION

In this case, the ALJ found that plaintiff had the following severe medically determinable impairments: obesity, degenerative disc disease of the spine, knee pain

with joint laxity, SJS of the right shoulder, chondromalacia of patella and osteoarthritis of the left knee, arthritis of the hips, fibromyalgia syndrome, migraine headaches, depression, bipolar disorder, anxiety, and posttraumatic stress disorder. AR 654. Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform light work. AR 657.

Relying on vocational expert ("VE") testimony, the ALJ found at step four that Plaintiff could not perform her past relevant work, but could perform other light, unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at step five that plaintiff was not disabled. AR 678-79.

A.    Whether the ALJ Properly Evaluated Medical Opinion Evidence

Plaintiff assigns error to the ALJ's evaluation of the medical opinion of treating source Dr. James Nakashima in favor of the opinions of state agency consultants. Dkt. 15, pp. 2-12.

1.    Medical Opinion Standard of Review

Plaintiff filed her application before March 27, 2017. AR 48, 125, 140, 651. Under the applicable rules, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

1

2.      Dr. Nakashima

2

In November 2019, Dr. Nakashima, one of plaintiff's treating sources, completed

3

a "Fibromyalgia Medical Source Statement" prepared by plaintiff's counsel. *See* AR

4

633-38. He indicated that plaintiff met the criteria for fibromyalgia, that her prognosis

5

was poor, and that her symptoms include multiple tender points, nonrestorative sleep,

6

chronic fatigue, frequent and severe headaches, numbness and tingling, anxiety, and

7

depression. *See* AR 634. He indicated plaintiff is positive for bilateral pain throughout

8

her body and rated that pain "7/10." AR 635.

9

Dr. Nakashima opined that based on plaintiff's symptoms, she would be "off task"

10

for "25% or more" of a typical workday, and that would most likely be absent from work

11

more than four days a month if she worked full time. AR 637. He opined plaintiff has

12

significant limitations with reaching, handling or fingering such that during an eight-hour

13

workday, she can use both of her hands one percent of the time, her fingers five percent

14

of the time, reach in front of her body with both arms one percent of the time, and reach

15

overhead with both arms zero percent of the time. AR 637. He opined that in a

16

competitive work situation, plaintiff can rarely lift ten pounds and never lift 20 or 50

17

pounds. AR 636. He opined that plaintiff would have to take unscheduled breaks during

18

a workday, and that on an average, plaintiff would have to rest for two to four minutes

19

before returning to work. AR 636. Dr. Nakashima also examined plaintiff in April 2019

20

and assessed that plaintiff has fibromyalgia, weakness of both hands, and

21

polyarthralgia. AR 977-78.

22

The ALJ discounted Dr. Nakashima's opinions because (1) he provided no

23

explanations for some of his findings, (2) it was inconsistent with plaintiff's medical

24

record, and (3) it was inconsistent with plaintiff's activities with daily living. AR 671-76.

25

1    With respect to the ALJ's first reason, an ALJ need not accept the opinion of a

2  treating physician, if that opinion is brief, conclusory and inadequately supported by

3  clinical findings. *See Batson v. Commissioner of Social Security Administration*, 359

4  F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

5  Cir. 2001)); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). A check-

6  box form is not any less reliable than another form of physician's opinion, and if such

7  opinions are supported by numerous records, the check-box form is entitled to the same

8  weight as any other medical opinion. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir.

9  2014).

10    Here, the ALJ specifically discounted Dr. Nakashima's opinion that plaintiff would

11  be off task for 25 percent of a workday, absent from work at least five days a month,

12  and is limited with using her hands and arms and with lifting and carrying because they

13  were speculative findings. *See* AAR 672-74. However, in his statement, Dr. Nakashima

14  indicated that his opinion had been based on his appointments with plaintiff from

15  December 2017 and November 2015. *See* AR 634. The notes from December 2017

16  show plaintiff had followed up about her fibromyalgia, she reported joint pain and

17  swelling in her hands, ankles, and knees, and that she rated her difficulty with

18  remembering and concentration "2/3." *See* AR 540.

19    With respect to the ALJ's second reason, an ALJ may reasonably reject a

20  doctor's opinions when they are inconsistent with or contradicted by the medical

21  evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

22  2004) (holding that a treating physician's opinion may properly be rejected where it is

23  contradicted by other medical evidence in the record). Here, in discounting Dr.

24

25

1    Nakashima's opinion that plaintiff's use of her hands be limited, the ALJ cited Dr.

2    Nakashima's recent treatment notes showing plaintiff had good right-hand grip and

3    range of motion of her hands. *See* AR 673 (citing AR 978). In discounting Dr.

4    Nakashima's opinion that plaintiff's level is "7/10", the ALJ cited treatment notes

5    showing symptoms had improved after surgery and therapy. AR 671-75 (citing AR 977-

6    78, 1491).  In discounting Dr. Nakashima's opinion about plaintiff's being "off task" for

7    25 percent of a workday, the ALJ identified plaintiff's mental status examinations

8    showing her alert and oriented, her thought process linear, intact and goal oriented, and

9    her speech clear and normal. *See* AR 671-72 (citing AR 1489, 1500, 503-04). As to Dr.

10   Nakashima's opinion that plaintiff would need two- to four-minute rest periods, the ALJ

11   cited treatment notes showing plaintiff denying fatigue. AR 674 (citing AR 287, 612,

12   1075, 1315).

13          However, the record also shows that plaintiff's grip was weak and that she had

14   trouble opening items with her hands. AR 614-16, 977. Plaintiff's memory and

15   concentration were poor; she reported aching pain and being fatigued, and was often

16   positive for myalgias. AR 470-73, 503 ("Positive for arthralgias and myalgias"; "endorses

17   cntd issues with concentration"), 537-39, 540-41 ("Pain is aching"; "Rates her fatigue at

18   3/3"; "Difficulty remembering concentration 2/3"), 552, 558, 566-69 ("positive for memory

19   loss"), 577-78, 588 ("difficulty thinking/concentration/making decisions"), 605 ("fatigue or

20   loss of energy… difficulty thinking/concentrating/making decisions"), 859-60 ("She

21   reports she has memory issues … She is exhausted and fatigued over the last 2

22   weeks"), 885, 860 ("Positive for arthralgias and myalgias"), 931, 977-78 ("Continues to

23   have significant fatigue"), 1220-21 ("Tired/fatigue"), 1235, 1270 ("Positive for

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 6

myalgias."), 1333 ("Positive for myalgias."; "Positive for fatigue"), 1505-08 ("Memory: fair Insight/Judgment: unaware, poor"), 1511 ("fatigue or loss of energy … and difficulty thinking/concentrating/making decisions").

These instances of poor memory, pain, and fatigue throughout plaintiff's record are important; Social Security Administration regulations recommend looking at a claimant's longitudinal records when the individual was diagnosed with fibromyalgia because the impairment's symptoms may "wax and wane," and a person may have "bad days and good days." SSR 12-2p at *6. *See also Revels v. Berryhill,* 874 F.3d 648, 663 (9th Cir. 2017). Considering that plaintiff's overall record shows she consistently experienced pain, had memory and concentration difficulties, and was often fatigued, the ALJ's finding is not supported by substantial evidence. Thus, in discounting the portion of Dr. Nakashima's opinion regarding plaintiff's limited use of her hands, her pain rating of "7/10," and plaintiff being "off task" and needing to take a break for two to four minutes based on their inconsistencies with the medical record, the ALJ erred.

The ALJ similarly erred in in discounting Dr. Nakashima's 2019 opinion by identifying "recent medical evidence" that showed plaintiff was negative for arthralgias, decreased range of motion, myalgias and neck stiffness, but disregarding other evidence in plaintiff's record. *See* AR 674 (citing AR 1246-47). As explained above, consideration of plaintiff's longitudinal record is relevant when assessing plaintiff's limitations in light of her fibromyalgia.

Plaintiff's record shows she continued to follow up for her impairments and she tested positive for myalgias and overall body aches and pains. See AR 540-541 ("Patient has 18/18 tender fiber myalgia points", "continues to have significant

fibromyalgia") 470-47 ("positive for arthralgias, myalgias, shoulder pain, tenderness), 537-539 ("arthralgia of both knees", increased dosage for fibromyalgia), 566-569, ("Positive for muscle aches, arthritis, back pain, stiffness, muscle cramps, joint swelling, muscle weakness, joint pain, loss of strength"), 577-578, 859, 885 ("joint pain, muscle aches"), 1220, 1270 ("Positive for myalgias"), 1333-1334, ("Positive for myalgias").

With regards to the ALJ's third reason, a material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting the treating physician's opinion. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999) (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's daily activities). Here, in discounting Dr. Nakashima's opinion about plaintiff being off task, her limited use of her hands and arms, the ALJ identified plaintiff's use of her phone, preparing meals, shopping, driving, stretching, and walking. *See* AR 637-75 (citing AR 296, 527, 532,537, 671, 960, 964, 1104, 1235, 1334, 1521).

But these activities do not necessarily undermine Dr. Nakashima's opinion, especially since some of them were at the instruction of plaintiff's physical therapists to assess her progress, and treatment notes show that she reported increased soreness from these activities. *See* AR 527, 532 ("Have patient stand and make dinner", "Have patient use her RUE to make dinner").  Further, claimants need not be utterly incapacitated to be eligible for benefits, and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it

might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Thus, in rejecting Dr. Nakashima's opinion based on plaintiff's activities, the ALJ erred.

In discounting Dr. Nakashima's opinions, the ALJ also relied on the opinion of State agency consultants, Dr. Steven Haney, Dr. Kistine Harrison, Dr. JD Fitterer, and Dr. Norman Staley, who examined plaintiff in April, May, and August 2017. *See* AR 669 (citing AR 125-38, 140-54). The state agency consultants opined that plaintiff is able to: stand and/or walk and sit for six hours in an eight-hour workday; push, pull, and manipulate with some or no limitations; have no significant to moderate concentration and persistence, social interaction, and adaptation limitations. *See* AR 125-38, 140-54.

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).

"In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons

that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

Here, the ALJ gave the consultants' opinions "great weight" because they were able to review the entire record, and their findings were "consistent with the record as a whole." *See* AR 669.

Plaintiff's record includes treatment notes from 2018 through 2020, and none of these were considered by the non-examining medical experts; therefore, the ALJ's reasoning that the consultants were able to review the entire record while Dr. Nakashima was not able to do so, is unconvincing. Moreover, as previously stated, when a claimant has fibromyalgia, the claimant's "longitudinal record" must be evaluated, considering that fibromyalgia symptoms can "wax and wane." *See* SSR 12-2p. Plaintiff's longitudinal records indicates that she consistently experienced fibromyalgia related symptoms, thus the Court cannot say that the consultants' opinions are substantially consistent with record as a whole. Dr. Nakashima noted symptoms supporting his absenteeism opinion and being "off task" as chronic fatigue, multiple tender points, nonrestorative sleep, anxiety, and frequent severe headaches. AR 541, 634-635, 674, 977-978. Dr. Nakashima's opinions concerning severity of these symptoms, and work-related limitations associated with these symptoms, are supported by the record.

Thus, the ALJ erred by discounting Dr. Nakashima's opinion in favor of non-examining medical professionals on this basis.

B.    Whether the ALJ Evaluated Plaintiff's Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of her symptom testimony. Dkt. 15, pp. 12-15.

Plaintiff testified that she is unable to work because of her shoulder impairment, fibromyalgia, migraine, mental health, osteoarthritis in her left knee, and arthritis. AR 691-700. Plaintiff explained that before undergoing surgery for her shoulder, she had extreme pain when she reached across her body and performed repetitive motions, such as when folding laundry and stirring food. *See* AR 691. Plaintiff testified that after her surgery in January 2019, she still has "quite a bit of pain" and remains having trouble with reaching up and over and repetitive motions, such as when washing her hair or folding laundry. *See* AR 693.

Plaintiff testified that due to her fibromyalgia, she has "pain and stiffness all throughout [her] body," back pain, brain fog, dizziness, balance problems, and joint pain. *See* AR 696. According to plaintiff, her body is sensitive to temperatures and her hands and feet can easily go numb. AR 697. Plaintiff also testified that she has had migraines since she was a teenager, she has weak hands and wrists, she cannot sit for very long, and has memory issues. *See* AR 698-700. As to her mental health, plaintiff testified that she has severe social anxiety which prevents her from getting out of the house and being around other people. AR 694-95.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 343, 346-47 (9th Cir. 1991)). As with all of the findings by the ALJ, the specific, clear and convincing

reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*, 161 F.3d at 601).

The ALJ discounted plaintiff's testimony because (1) her symptoms "improved with treatment, including surgery, physical therapy, counseling, and medication," (2) it is inconsistent with her medical record, and (3) she is noncompliant with treatment. *See* AR 660-69.

Regarding the ALJ's first reason, evidence that medical treatment helped a claimant "'return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders' . . . can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1 (2014)). Here, in discounting plaintiff's testimony regarding her shoulder difficulties, the ALJ cited treatment notes showing increased progress with her exercises. *See* AR 660 (AR 952, 956, 960, 1065-66, 1201).

The record supports the ALJ's assessment. Plaintiff's physical therapists noted of plaintiff's improved range of motion with her shoulder, she made "steady progress," and plaintiff's pain levels were low. AR 952, 1065-66. Plaintiff herself also reported that her shoulder was not sore after her sessions, and in July 2019, that she was ready for discharge. AR 960, 1201. Based on these treatment notes, the ALJ could reasonably discount plaintiff's testimony as to the severity and intensity of her shoulder pain and thus did not err.

The ALJ similarly did not err in discounting plaintiff's testimony about her migraines and her mental health based on her improvement from medication. *See* AR 662. Treatment notes show that after plaintiff reported with migraines to the emergency

1  room, she was discharged after it "significantly improved" with medication. *See* AR 513,

2  1247-48. Treatment notes also show plaintiff reported that medication continued to help

3  with her mood, depression, and anxiety, and that she refused or made no requests for

4  increase in medication because she was stressed and depressed due to life stressors.

5  *See* AR 667, 1500, 1503-04. Given that these records undermine plaintiff's testimony as

6  to the severity of her migraine and mental health, the ALJ could also reasonably

7  discount her testimony and thus did not err in doing so. And because the ALJ has

8  provided at least one clear and convincing reason to discount these portions of plaintiff's

9  testimony, the Court need not further discuss the other reasons offered by the ALJ.

10  Even if those reasons were erroneous, those errors would be harmless. *See Carmickle*

11  *v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008)

12  (inclusion of erroneous reasons is harmless).

13          With regards to the ALJ's second reason, "[c]ontradiction with the medical record

14  is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* at 1161 (citing

15  *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). Here, in discounting plaintiff's

16  testimony regarding her degenerative disc disease, knee osteoarthritis, and arthritis, the

17  ALJ cited medical records showing unremarkable findings. *See* AR 664 (citing AR 542,

18  1387. The record shows that plaintiff's lumbar spine "appear normal" and "stable," a

19  radiography of her left knee showed a negative result, and Dr. Nakashima found "no

20  rheumatoid arthritis." *See* AR 540, 542, 581, 1387. Given these findings undermine

21  plaintiff's testimony, the ALJ could also reasonably discount her statements about these

22  symptoms.

23

24

25

1    However, the ALJ could not reasonably discount plaintiff's testimony about the

2    effects of *her fibromyalgia* for the same reason. Here, the ALJ specifically points to

3    plaintiff's physical examinations showing she was oriented to person, place, and time,

4    that she was well developed and well nourished, and that her memory and judgment

5    were grossly intact. *See* AR 663, 669 (citing AR 482-84 554-56, 591-94, 933, 1190,

6    1333, 1548). But the Ninth Circuit has cautioned against relying upon

7    normal physical examination findings to discount medical opinions and claimant

8    testimony concerning fibromyalgia, a condition diagnosed "entirely on the basis of

9    patients' reports of pain and other symptoms." *Revels*, 874 F.3d at 663, 666,

10   citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). As discussed above,

11   plaintiff repeatedly reported overall body pain, fatigue, and difficulties with her memory

12   and concentration. Thus, that plaintiff's physical examinations showing largely normal

13   findings, cannot by itself, serve as a clear and convincing reason to discount plaintiff's

14   symptoms about the effects of her fibromyalgia.

15   Finally, with regards to the ALJ's third reason, "an unexplained, or inadequately

16   explained, failure to seek treatment or follow a prescribed course of treatment" can

17   constitute a sufficient reason for discrediting a claimant's symptom testimony. *Fair*, 885

18   F.2d at 603. Here, the ALJ pointed to treatment note where plaintiff's nurse noted that

19   she had a discussion to address the fact that she was "using too many of her pain pills a

20   day" for her fibromyalgia. *See* AR 664 (citing AR 1337). But the ALJ does not explain

21   how plaintiff's action serves to undermine her statements about the severity of her

22   fibromyalgia symptoms, and when considering the ALJ's erroneous evaluation of

23   plaintiff's record as a whole, this reason by itself is an insufficient reason to support the

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 14

ALJ's discounting of Plaintiff's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony).

C.   Whether the ALJ Properly Evaluated Lay Witness Testimony

Plaintiff assigns error to the ALJ's evaluation of Ms. Theresa Linden, plaintiff's former mother-in law. Dkt. 15, pp. 17-18.

Ms. Linden completed two third-party function reports in March and August 2017. AR 313-20, 342-49. Ms. Linden wrote in both reports that plaintiff has troubles with cooking, cleaning, housework, laundry, shopping, and hygiene. AR 313. She wrote that plaintiff's activities consist of driving her sons to and from school, going back to bed, watching television, taking care of her dog, and using her phone. AR 315, 344. She explained that plaintiff does household chores, but usually needs help. 315, 344. She wrote that plaintiff shops for groceries and clothes. AR 316, 345. As for social activities, Ms. Linden wrote that plaintiff interacts with others mostly through her phone by text messages. AR 317, 345.

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

Here, the ALJ discounted Ms. Linden's testimonies for their internally inconsistencies. AR 676. Specifically, the ALJ pointed out that though Ms. Linden wrote that plaintiff does not go out, she also wrote that plaintiff walks her dog, drives her sons to and from score, and go shopping. *See id*. However, Ms. Linden only wrote that

plaintiff does not go out when asked about plaintiff's hobbies and social activities, not when asked about other daily activities. *See* AR 317, 347. Further, Ms. Linden wrote that plaintiff only performs those activities only as needed or a couple of times. AR 316, 345-46. Given that there are no internal inconsistencies within Ms. Linden reports, the ALJ did not provide a germane reason to discount her testimonies and thus erred.

D.      Harmless Error

An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

In this case, the ALJ's errors were not harmless because a proper evaluation of the Dr. Nakashima's opinion, and the testimonies of plaintiff and her former mother-in-law could change the ALJ's assessment of Plaintiff's RFC and may affect the hypotheticals provided to the VE.

E.      Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

"(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

As discussed above, the ALJ harmfully erred in evaluating Dr. Nakashima's medical opinion and the testimonies of plaintiff regarding her fibromyalgia and her former mother-in-law. Dr. Nakashima opined that based on plaintiff's symptoms, she would be "off task" for "25% or more" of a typical workday, and that would most likely be absent from work more than four days a month if she worked full time. AR 637. The record has been fully developed, and there is no purpose to be served by another administrative hearing. If Dr. Nakashima's opinion is credited as true, and plaintiff's testimony concerning her fibromyalgia is credited as true, the plaintiff would be found disabled. See Dkt. 705-707, V.E.'s testimony (a person would not be able to sustain employment if they would be off task at least 20 percent of the day, nor would a person be able to sustain employment if they were absent two or more working days per month).

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he/she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for award of benefits.

Dated this 2nd day of November, 2022.


*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 18